UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Enamidem Celestine Okon,

                Petitioner,                Court File No. 14-cv-4499 (JRT/LIB)

v.                     **ORDER AND**

                                   **REPORT AND RECOMMENDATION**

Warden of Moose Lake Prison,
State of Minnesota,

                Respondent.

This matter comes before the undersigned United States Magistrate Judge upon Petitioner Enamidem Celestine Okon's ("Petitioner") Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, [Docket No. 1]; and Petitioner's Motion to Delete Unexhausted Claim, [Docket No. 19]. This case has been referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

For reasons discussed herein, the Court recommends that the Petition for writ of habeas corpus, [Docket No. 1], be **DENIED** and this action be **DISMISSED with prejudice.** The Court will also **DENY** Petitioner's Motion to Delete Unexhausted Claims, [Docket No. 19], as moot.

## I.    BACKGROUND AND STATEMENT OF FACTS

On or about October 27, 2014, Petitioner Enamidem Celestine Okon ("Petitioner"), a state prison inmate, filed a *pro se* Petition for a writ of habeas corpus with the Court challenging his Minnesota state court conviction for aiding and abetting first-degree sexual conduct. (Petition, [Docket No. 1]).

In the relevant underlying state court proceedings, Petitioner was charged with one count of Aiding and Abetting Criminal Sexual Conduct in the First Degree, in violation of Minn. Stat. § 609.342, Subd. 1(e)(i); and one count of Aiding and Abetting Criminal Sexual Conduct in the First Degree, in violation of Minn. Stat. § 609.342, Subd. 1(f)(i). In relation to the same incident for which Petitioner was charged, Chukwudi Gregory Jideofor ("Jideofor"), was charged with Criminal Sexual Conduct in the First Degree – Force or Coercion with an Accomplice, in violation of Minn. Stat. § 609.342, Subd. 1(f)(i). (See Respondent's Ex. E, Trial Tr. 300).

Prior to Petitioner's trial, Jideofor entered an Alford plea, in which he testified that he had not committed the acts for which he was charged but admitted that a jury was likely to find him guilty. (See Id.).

Petitioner filed a pretrial motion to be allowed to offer at trial evidence of the number of semen DNA samples found in swabs taken from the victim's underwear and person as well as evidence that the victim had worked as an escort. (Petitioner's Exhibit, [Docket No. 3], 1). On May 20, 2013, the state trial court judge issued an Order and Memorandum granting the motion in part and allowing Petitioner to introduce evidence relating to the semen DNA samples only for the limited purpose of showing that he was not a match to those samples, but excluding all other evidence of the victim's prior sexual conduct, including the employment as an escort. (Respondent's Ex. D, Pet's Addendum to Petition for Discretionary Review, 24). The trial court reasoned that Minnesota Rule of Evidence 412(a)(B) and Minn. Stat. § 609.347, Subd. 3(b) allowed a defendant to introduce evidence of a victim's prior sexual conduct to show the source of semen in cases where the prosecution's case included evidence of such, and that the prosecution in Petitioner's case had indicated that it intended to introduce evidence of semen DNA samples. (Id. at 30-32).

At trial, the prosecution called two forensic scientists employed by the Minnesota Bureau of Criminal Apprehension, among other witnesses, to testify that there was insufficient DNA on the rectal swab to produce a conclusive result. (Id. at 220-254). Petitioner's attorney did not object to the witnesses' testimony but did cross-examine them. (See generally, Id.). The prosecution also called Jideofor to testify. (Id. at 260-312). Before Jideofor began his testimony, the prosecution read into the record a stipulation by the parties, which, in pertinent part, stated that Jideofor had already pled guilty to a charge of criminal sexual conduct in the first degree – force or coercion with an accomplice, for Jideofor's role in the offenses. (Id. at 260-61). Jideofor was then subjected to direct and cross-examination by the prosecution and Petitioner's trial counsel. (See generally, Id. at 261-312). On cross-examination, Petitioner's trial counsel elicited Jideofor's testimony that he had entered an Alford plea and had testified at the Alford plea hearing that he had not committed the acts that he was charged with, but had admitted that a jury would be likely to find him guilty. (Id. at 300).

Prior to closing arguments, the state trial court reviewed the final jury instructions with the parties. (Id. at 347-48). Petitioner's trial counsel did not object to the proposed final jury instructions, which did not contain an instruction defining an Alford plea or an instruction regarding accomplice testimony. (Id. at 348; see also Id. at 363-78 (content of jury instructions)). Petitioner's trial counsel did not request that the trial court add an instruction defining an Alford plea or an instruction regarding accomplice testimony. (Id. at 348). The jury ultimately found defendant guilty of both charges of aiding and abetting first degree criminal sexual conduct. (Id. at 438-439).

After being sentenced, Petitioner, represented by different counsel, filed a direct appeal to the Minnesota Court of Appeals. (See Respondent's Ex. A). In his appeal, Petitioner asserted: (1)

3

that he was denied his right to due process when the state trial court excluded evidence of the number of semen DNA samples taken from the victim's underwear and the rectal swab; (2) that, by introducing evidence that the DNA on the rectal swab was insufficient to produce a conclusive result, the prosecution had opened the door and rendered evidence of the number of DNA semen samples from the rectal swab admissible; (3) that the trial court had erred by excluding evidence of the victim's employment as an escort; (4) that the trial court had committed plain error in drafting its jury instructions by not drafting the "intentional aiding and abetting" element of the charges as required under State v. Milton, 821 N.W. 2d 729 (Minn. 2012), and by not properly defining the term "coercion"; (5) prosecutorial misconduct; and (6) ineffective assistance of trial counsel. (Id. at i-iii). As grounds for his claim of ineffective assistance of trial counsel, Petitioner argued that his trial counsel had not objected to the prosecution's introduction of DNA evidence from the rectal swab; had failed to adequately impeach Jideofor; had allowed Petitioner to stipulate that Jideofor had entered a straight plea rather than an Alford plea; had not objected to the jury instructions; and had not requested a jury instruction defining an Alford plea. (Id. at 44).

On August 4, 2014, the Minnesota Court of Appeals affirmed Petitioner's conviction. (Respondent's Ex. D, Pet's Addendum to Petition for Discretionary Review, 1). It concluded that the trial court had not abused its discretion in excluding evidence of the number of semen sources on the victim's underwear and the rectal swab, concluding that the evidence was not relevant to whether Petitioner had engaged in vaginal sex with the victim. (Id. at 7). The Minnesota Court of Appeals also concluded that the prosecution had not opened the door to evidence of the number of semen DNA samples taken from the rectal swab, reasoning that, under State v. Bailey, 732 N.W.2d 612, 622 (Minn. 2007), the prosecution's admission of the rectal

4

swab had not created in Petitioner a right to submit evidence of the number of semen samples, which was irrelevant to the issues actually in the case. (Id. at 9). The Minnesota Court of Appeals further concluded that the state trial court had not abused its discretion in excluding evidence of the victim's employment as an escort, concluding it was not relevant to any facts at issue in the case. (Id. at 9-11). The Minnesota Court of Appeals concluded that the trial court had not erred in drafting its aiding and abetting instruction. (Id. at 12-13). While the Minnesota Court of Appeals did conclude that the trial court had erred in defining the term coercion in the jury instructions, it also determined that there was "minimal, if any, likelihood" that the error had affected the verdict. (Id. at 13-14). The Minnesota Court of Appeals reasoned that the error in the coercion definition was that it had stated that coercion meant the use of words, circumstances, or strength by Petitioner to compel the victim to engage in sexual activity, whereas a correct definition would have stated that coercion meant the use of words, circumstances, or strength by Petitioner *or Jidefor*. (Id. at 14). The Minnesota Court of Appeals also noted that the jury was only required to find as an element of the charged offense that Jideofor had used force or coercion and there was evidence that Jideofor has coerced the victim. (Id. at 11-14).

The Court of Appeals also held that there had been no prosecutorial misconduct, that all of the alleged errors of Petitioner's trial counsel had constituted matters of trial strategy, and that Petitioner had not, in any event, shown that the result of the trial would have been different in the absence of his trial counsel's strategic choices. (Id. at 14-18).

Petitioner next sought relief by petitioning the Minnesota Supreme Court to exercise discretionary review of the August 4, 2014, Minnesota Court of Appeals' decision, raising as issues: (1) that, under Milton, 821 N.W. 2d 729, and State v. Mahkuk, 736 N.W.2d 675 (Minn.

5

2007), the trial court had erred in drafting its aiding and abetting instruction and in defining coercion; (2) that the trial court had abused its discretion in excluding evidence of the number of semen DNA samples on the victim's underwear and on the rectal swab; and (3) that Petitioner had received ineffective assistance of trial counsel. (Respondent's Ex. D, Petition for Discretionary Review, 1-2). As grounds for his claim of ineffective assistance of counsel, Petitioner argued that his trial counsel had not objected to the prosecution's introduction of DNA evidence from the rectal swab; had allowed Petitioner to stipulate that Jideofor had entered a straight plea rather than an <u>Alford</u> plea; had not objected to the jury instructions; and had not requested a jury instruction defining an <u>Alford</u> plea. (<u>Id.</u> at 2). The Minnesota Supreme Court denied the petition for discretionary review on October 14, 2014.

Petitioner filed the present Petition for writ of habeas corpus on October 27, 2014. (Petition [Docket No. 1]), asserting five grounds for relief. Respondent filed its Response on January 12, 2015. (Response, [Docket No. 13]). On January 28, 2015, Petitioner filed a Motion to Delete Unexhausted Claim. (Motion to Delete Unexhausted Claim, [Docket No. 19]).

### III. OKON'S MOTION TO DELETE UNEXHAUSTED CLAIM, [Docket No. 19].

In his Petition for writ of habeas corpus, [Docket No. 1], Petitioner asserts five grounds for relief, namely that: (1) the state trial court violated his right to due process and Sixth Amendment right to confrontation by excluding evidence of the number of semen DNA samples on the victim's underwear and on the rectal swab; (2) he received ineffective assistance from his trial counsel; (3) that the trial court's jury instructions violated his rights under the Fifth, Sixth, and Fourteenth Amendments to the United State Constitution; (4) the Minnesota Court of Appeals was not impartial; and (5) the prosecutor engaged in misconduct. In opposition, Respondent asserted that Petitioner had procedurally defaulted grounds three (jury instructions),

four (judicial partiality), and five (prosecutorial misconduct), by not presenting those grounds to the Minnesota Supreme Court. (Response, [Docket No. 13] at 13-19). Petitioner thereafter filed the present Motion to Delete Unexhausted Claim, [Docket No. 19], in which he asks the Court to allow him to delete grounds four and five of his Petition, as he admits that he did not present those claims to the Minnesota Supreme Court in his Petition for Discretionary Review, and seeks to delete them from his Petition in order to obtain habeas review of his other grounds for relief.

As Petitioner admits, he did not present his claim of prosecutorial misconduct or his claim that the Minnesota Court of Appeals was not impartial to the Minnesota Supreme Court in his Petition for Discretionary Review.

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.... To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.

Carney v. Fabian, 441 F. Supp. 2d 1014, 1022 (D. Minn. 2006) aff'd, 487 F.3d 1094 (8th Cir. 2007) (quoting Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted)). In the present case, Petitioner's failure to present those claims to the Minnesota Supreme Court does not render those claims unexhausted, but rather procedurally defaulted.

If there is a state court remedy that is still available for a state prisoner's unexhausted claim, the federal court considering a habeas petition must defer action on the petition until the claim is exhausted, either by dismissing the federal petition without prejudice or by using the 'stay and abeyance' procedure described in Rhines v. Weber, 544 U.S. 269 (2005). Boss v. Ludwick, 863 F. Supp. 2d 845, 854-56 (N.D. Iowa 2012). However, when there is no state court remedy available for an unexhausted claim, the exhaustion requirement in § 2254(b) is

7

considered to have been satisfied and the failure to exhaust instead "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim[.]" Gray v. Netherland, 518 U.S. 152, 162 (1996); see also Coleman v. Thompson, 501 U.S. 722, 731–32 (1991).

In State v. Knaffla, 309 Minn. 246, 243 N.W.2d 737 (Minn. 1976), the Minnesota Supreme Court held that, where a criminal defendant has pursued a direct appeal, "all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." Carney, 441 F. Supp. 2d at 1021 (citing Knaffla at 252, 243 N.W.2d at 741). Petitioner's claims of prosecutorial misconduct and judicial partiality were based on matters that were known during the direct appeal and Petitioner could have presented those claims to the Minnesota Supreme Court in his direct appeal. As a result, under the Minnesota Knaffla rule, Petitioner cannot now bring those claims in the state courts of Minnesota in a petition for post-conviction relief. As such, resort to the Minnesota state courts with regard to those claims would be futile. "Thus, . . . the only question is whether the petitioner can overcome the procedural default of the challenged claims to allow them to be considered by the federal court pursuant to § 2254." Boss, 863 F. Supp. 2d at 854-56. "[T]o receive federal review of habeas claims that have been procedurally defaulted in state court, the petitioner must demonstrate cause for the default and actual prejudice." Charron v. Gammon, 69 F.3d 851, 857 (8th Cir. 1995) (citing Coleman, 501 U.S. at 750).[1] "[I]if the petitioner cannot overcome procedural default of the challenged claims, dismissal of those claims is proper." Boss, 863 F. Supp. 2d at 854-56 (citing Welch v. Lund, 616 F.3d 756, 760 (8th Cir. 2010)).

---

[1] A petitioner may also obtain review of a procedurally defaulted claim by asserting the discovery of new evidence showing actual innocence, which is not an issue in this case.

Petitioner has made no effort to explain the cause for procedurally defaulting his claims of prosecutorial misconduct and judicial partiality. Nor has Petitioner argued that he has in any way been prejudiced by the procedural default of those grounds for relief. Accordingly, Petitioner has failed to demonstrate the cause and prejudice necessary to overcome the procedural default of those claims. As Petitioner cannot now bring those claims before the state courts of Minnesota and cannot have those claims reviewed in this habeas petition, deleting those claims would serve no purpose.

In light of the foregoing, the Court will **DENY** Petitioner's Motion to Delete Unexhausted Claims, [Docket No. 19], as moot.

## IV. OKON'S PETITION FOR WRIT OF HABEAS CORPUS, [Docket No. 1].

As concluded in the immediately previous section, Petitioner has procedurally defaulted grounds four (judicial partiality) and five (prosecutorial misconduct) of his Petition and cannot obtain review of those claims by this Court. Before the Court addresses the merits of Plaintiff's remaining grounds for relief, it must address Respondent's assertion that Petitioner has also procedurally defaulted his third ground for relief, in which Petitioner asserts that the state trial court violated his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution by not giving an instruction on accomplice testimony; by incorrectly stating the intent element in the aiding and abetting instruction; and by incorrectly defining the term "coercion." Respondent points out that, in his direct appeal, Petitioner argued only that the trial court's jury instructions violated Minnesota law and that Petitioner did not present to the state courts any argument that the jury instructions in any way violated federal law. Petitioner admits that he did not argue to the Minnesota courts that the jury instructions violated federal law, but he now asserts that his arguments under state law were sufficient to provide the state courts

9

below with notice of his federal challenges to the jury instructions and thus preserve his federal law challenge for habeas review.

A state prisoner seeking federal habeas relief does not have to spell out every aspect of his federal constitutional claims to the state courts, "but he does have to give the state courts fair notice that there is indeed a federal constitutional dimension to his claims." Carney, 441 F. Supp. 2d at 1022 (quoting Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (*per curiam*) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution."). Both the United States Supreme Court and the Eighth Circuit have made it clear that "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts ... or that a somewhat similar state-law claim was made." Anderson v. Harless, 459 U.S. 4, 7 (1982) (internal citation omitted); accord Morris v. Norris, 83 F.3d 268, 270 (8th Cir. 1996) ("Even if state law 'bears some relation to federal constitutional requirements, habeas petitioners must have explicitly cited to the United States Constitution or federal case law in their direct [state court] appeal to preserve federal review.").

On direct appeal, Petitioner made no reference whatsoever to federal law in his arguments challenging the trial court's jury instructions. Accordingly, Petitioner's state law challenge to the trial court's jury instructions was not sufficient to put the state courts on notice of his federal constitutional claims. In addition, as the legal basis for Petitioner's federal law challenge to the jury instructions was known at the time of Petitioner's direct appeal, Petitioner cannot bring his argument that the jury instructions violated federal law in a post-conviction proceeding before the Minnesota state courts and resort to those courts would be futile. As a

result, Petitioner has also procedurally defaulted ground three: his federal challenge to the trial court's jury instructions. The Court now turns to Petitioners' two remaining grounds for relief.

### A. Standard of Review

"The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) instructs federal courts to engage in a "limited and deferential review of underlying state court decisions." Mark v. Ault, 498 F.3d 775, 782-83 (8th Cir. 2007). Under the AEDPA, relief may not be granted to a petitioner with respect to any claim that was adjudicated on the merits in state court unless the state court's decision:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court; or,

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Federal courts consider a decision "contrary to" precedent when a state court "arrives at a conclusion opposite to that reached by the [Supreme] Court on a question of law" or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 413 (2000). An "unreasonable application" of federal law exists when the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Id. at 408. Federal courts "may not issue the writ simply because it 'concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that

application must also be unreasonable.'" Lyons v. Luebbers, 403 F.3d 585, 592 (8th Cir. 2005) (quoting Williams, 529 U.S. at 411). In reviewing state court decisions, a "federal court also presumes that the state court's factual determinations are correct." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000). A petitioner can only rebut this factual presumption by "clear and convincing evidence." Id.; 28 U.S.C. § 2254(e)(1).

### B. Exclusion of DNA Evidence

Petitioner argues that the trial court violated his right to due process and Sixth Amendment right to confrontation when it abused its discretion by excluding evidence of the number of semen DNA samples in the victim's underwear and on a rectal swab taken from the victim. Petitioner also argues that the Minnesota Court of Appeals erred when it concluded that the prosecution's introduction at trial of DNA evidence from the rectal swab had not "opened the door" to render the otherwise excluded evidence of the number of semen DNA samples admissible.[2]

The Court notes as an initial matter that Petitioner did not argue in his brief to the Minnesota Court of Appeals or in his Petition for Discretionary Review to the Minnesota Supreme Court that the trial court's exclusion of evidence of the number of DNA samples violated his Sixth Amendment right to confrontation. For the same reasons that the Court has already articulated with respect to Petitioner's third, fourth, and fifth grounds for relief, Petitioner has procedurally defaulted his federal argument that his Sixth Amendment right to confrontation was violated by the trial court's exclusion of evidence of the number of DNA

---

[2]Petitioner did not object to the prosecution's introduction of DNA evidence from the rectal swab at trial or attempt to introduce evidence of the number of semen DNA samples from the rectal swab after the state introduced the rectal swab DNA evidence. As such, the Minnesota Court of Appeals was the first court to consider whether the prosecution's introduction of the rectal swab DNA evidence "opened the door" to render evidence of the number of semen DNA samples on the rectal swab admissible.

samples on the rectal swab and on the victim's underwear. However, out of an abundance of caution, the Court will consider the Petitioner's assertions.

   1. Exclusion of Evidence of Number of DNA Samples

Petitioner challenges the trial court's exclusion of evidence of the number of semen DNA samples on the victim's underwear and the rectal swab. Although Petitioner attempts to label the trial court's evidentiary decision as a violation of his federal due process rights, the state trial court determined the scope of the admissibility of the DNA evidence that Petitioner sought to admit at trial under Minnesota law in the form of Minnesota Rule of Evidence 412 and Minn. Stat. § 609.347, Subd. 3(b). The United States Supreme Court has made it clear that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, law or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67 (1991) (citing 28 U.S.C. § 2241; Rose v. Hodges, 423 U.S. 19, 21 (1975) (*per curiam*). This Court may not review the state trial court's decision applying solely Minnesota law to determine the scope of admissibility of the DNA evidence that Petitioner sought to admit into evidence at trial.

   2. Introduction of Evidence as "Opening the Door"

Petitioner next challenges the determination of the Minnesota Court of Appeals that the prosecution's introduction of evidence of DNA evidence from the rectal swab did not "open the door" to render evidence of the number of semen DNA samples on the rectal swab admissible. Although Petitioner also attempts to label the Minnesota Court of Appeals determination as a violation of his federal due process rights, the Minnesota Court of Appeals relied on the principle discussed in Bailey, which itself applied only state law, that a party "open[s] the door" when

"one party by introducing certain material . . . creates in the opponent a right to respond with material that would otherwise have been inadmissible." Bailey, 732 N.W.2d at 622 (quoting State v. Valtierra, 718 N.W.2d 425, 436 (Minn. 2006)). As previously noted, under AEDPA, this Court on habeas review cannot upset a state court's determination applying solely state law. See generally, Estelle, 502 U.S. at 67.

### C. Ineffective Assistance of Trial Counsel.

Petitioner next seeks review of the Minnesota Court of Appeals' determination that Petitioner's trial counsel had not provided ineffective assistance with respect to his failure to object to the prosecution's introduction of evidence from the rectal swab; failure to adequately impeach Jideofor; allowing Petitioner to stipulate that Jideofor had entered a straight guilty plea rather than an Alford plea; failure to object to the jury instructions; failure to request a jury instruction defining an Alford plea; and failure to request an accomplice testimony jury instruction.

Although Petitioner did generally present his legal claim of ineffective assistance of trial counsel to the Minnesota Supreme Court, Petitioner did not specifically assert in his Petition for Discretionary Review that his trial counsel failed to adequately impeach Jideofor or that his trial counsel failed to request an accomplice testimony jury instruction. As a result, Petitioner has also procedurally defaulted those factual bases for his claim of ineffective assistance of trial counsel for the same reasons that this Court has already articulated with respect to Petitioner's procedural defaults of ground three, ground four, ground five, and ground one above. See Krimmel v. Hopkins, 56 F.3d 873, 876 (8th Cir. 1995) (holding that to preserve a claim for habeas review a petitioner must have presented the *same factual grounds* and legal theories to the state courts).

14

The Minnesota Court of Appeals analyzed Petitioner's ineffective assistance claim under the standard of Strickland v. Washington, which requires a showing that: (1) counsel's performance was so deficient, that his attorney was not functioning as the "counsel" guaranteed a defendant by the Sixth Amendment; and (2) "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., 466 U.S. 668, 687 (1984). Applying the Strickland standard, the Minnesota Court of Appeals concluded that all of the alleged errors of Petitioner's trial counsel had in fact been strategic matters that were almost unchallengeable[3] and that Petitioner, in any event, had not shown that the result of trial would have been any different. See Strickland, 466 U.S. at 700 ("Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim.").

As such, the Minnesota Court of Appeals identified and applied the correct federal standard. The only questions remaining are whether the Minnesota Court of Appeals' determination that Petitioner's trial counsel's alleged errors were unreviewable strategic decisions and that Petitioner had failed to show that he was prejudiced as a result of his counsel's actions were contrary to, or involved an unreasonable application of, clearly established federal law.[4]

1. Failure to Object to Rectal Swab DNA Evidence.

Petitioner first asserts that his trial counsel was ineffective for failing to object to the prosecution's introduction of evidence regarding semen DNA samples from the rectal swab. Petitioner has not argued before this Court nor before the state courts below that the

---

[3] The Supreme Court articulated such a principle in Strickland. See Id., at 690-691 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]").

[4] With respect to his claim of ineffective assistance of trial counsel, Petitioner makes no argument that the trial court's application of federal law resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.

15

prosecution's evidence of the DNA samples from the rectal swab was inadmissible. The Eighth Circuit has held that a counsel's "failure" to object to admissible evidence does not meet either the performance or prejudice prong of the Strickland standard. Anderson v. Goeke, 44 F.3d 675, 680 (8th Cir. 1995). Accordingly, the determination of the Minnesota Court of Appeals that Petitioner was not prejudiced by the "failure" to object was not contrary to, and did not involve an unreasonable application of, federal law.

    2. Alford Plea Stipulation.

Petitioner next challenges the fact that his trial counsel "allowed" him to stipulate to the fact that Jideofor had entered a straight guilty plea rather than an Alford plea. The Minnesota Court of Appeals concluded that Petitioner's trial counsel's decision to "allow" Petitioner to stipulate that Jideofor had entered a straight plea was a matter of trial strategy. The Court notes that Petitioner's trial counsel cross-examined Jideofor at the trial, through which he obtained Jideofor's testimony that he had entered an Alford rather than a straight plea; that Jideofor had testified at the plea hearing that he did not do the things he was charged with; and that Jideofor had, in entering the Alford plea, only acknowledged that a jury was likely to find him guilty. Courts routinely conclude that decisions to stipulate to damaging facts and cross-examination tactics are matters of trial strategy. See, e.g., Nielsen v. Hopkins, 58 F.3d 1331, 1336 (8th Cir. 1995) (stipulation to defendant having shot the victim a matter of trial strategy); United States v. Orr, 636 F.3d 944, 952 (8th Cir. 2011) (cross-examination generally a matter of trial strategy). Accordingly, the Minnesota Court of Appeals' determination that Petitioner's trial counsel's permitting Petitioner to stipulate that Jideofor had entered a straight plea was not contrary to, and did not involve an unreasonable application, of federal law. Further, as Petitioner's trial counsel brought out on cross-examination the very facts that Petitioner argues were not revealed to the

16

jury as a result of his entry into the stipulation, Petitioner has also failed to show that he was prejudiced by the stipulation regarding the nature of Jideofor's plea.

### 3. Alford Plea Instruction

Petitioner also argues that his trial counsel's failure to request an Alford plea jury instruction was ineffective. Courts have found a trial counsel's decision not to request a jury instruction regarding the testimony of a witness to be a matter of trial strategy. See, e.g., Bear Stops v. United States, 204 F. Supp. 2d 1209, 1216 (D.S.D. 2002) aff'd, 339 F.3d 777 (8th Cir. 2003). Accordingly, the Minnesota Court of Appeals' determination that the decision to not request an Alford plea jury instruction was a strategic matter was not contrary to, and did not involve an unreasonable application of, federal law. In addition, as noted above, Petitioner's trial counsel was able to bring out on cross-examination the facts that an Alford plea jury instruction would be designed to present to the jury, i.e., that an Alford plea does not require admittance of guilt and that Jideofor had in fact not admitted guilt. As such, Petitioner has also failed to show that he was prejudiced by his trial counsel's decision not to request an Alford plea jury instruction.

### 4. Failure to Object to Jury Instructions.

Finally, Petitioner argues that his trial counsel was ineffective for failing to object to various jury instructions. The Minnesota Court of Appeals determined that the only error in the trial court's jury instructions was the trial court's definition of the term coercion. With regard to all of the other jury instructions, the Eighth Circuit has held that it meets neither the performance nor the prejudice prong of the Strickland test for trial counsel to "fail" to object to correct jury instructions. United States v. Flynn, 87 F.3d 996, 1001 (8th Cir. 1996).

With regard to the erroneous definition of the term coercion, the Minnesota Court of Appeals concluded that Petitioner had not shown that he had been prejudiced because it was unlikely, if at all, that the result of the trial would have been different had the trial court correctly defined coercion. The Minnesota Court of Appeals reasoned that the error in the coercion definition was that it had stated that coercion meant the use of words, circumstances, or strength *by Petitioner* to compel the victim to engage in sexual activity, when a correct definition would have stated that coercion meant the use of words, circumstances, or strength *by Petitioner or Jideofor*. The Minnesota Court of Appeals also noted that the jury was only required to find as an element of the charged offense that Jideofor had used force or coercion and there was evidence in the trial record that Jideofor had indeed coerced the victim. The Eighth Circuit has held that even a plainly erroneous jury instruction will not have prejudiced a defendant unless the evidence would have produced a different result had the correct instruction been given. United States v. Mashek, 606 F.3d 922, 931 (8th Cir. 2010). On that basis, the Eighth Circuit has also held that a habeas petitioner is unable to show that he was prejudiced by his counsel's failure to object to a plainly erroneous instruction where the evidence would have supported a conviction even if the unchallenged erroneous instruction had been given correctly. Close v. United States, 679 F.3d 714, 721 (8th Cir. 2012). The Minnesota Court of Appeal's determination that Petitioner had not shown that he was prejudiced by his trial counsel's failure to object to the clearly erroneous definition of coercion in the jury instructions is analogous to the Eighth Circuit's reasoning in Close.

In light of the foregoing, the Minnesota Court of Appeals' determination that Plaintiff was not prejudiced by his trial counsel's failure to the object to the trial court's jury instructions was not a decision that was contrary to, or involved an unreasonable application of, federal law.

18

In summary, Plaintiff has procedurally defaulted all of the grounds of his habeas petition except his challenge to the trial court's exclusion of evidence of the number of DNA samples on the victim's underwear and the rectal swab, and four of the six bases for his claim of ineffective assistance of counsel. However, the trial court's decision to exclude evidence of the number of DNA samples was based solely on an interpretation of state law which this Court may not review in the context of considering a habeas petition. Likewise, the determination of the Minnesota Court of Appeals that the prosecution had not opened the door to the otherwise excluded DNA evidence was based solely on state law. In addition, the Minnesota Court of Appeals' determinations that Plaintiff's trial counsel's alleged errors were matters of strategy and, in any event, not prejudicial, were decisions that were not contrary to, or involved unreasonable applications of, federal law.

Accordingly, the Court recommends **DENYING** the Petition for a writ of habeas corpus, [Docket No. 1], and **DISMISSING** Petitioner's claims **with prejudice**.

### D. Certificate of Appealability

A Section 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition unless he is granted a Certificate of Appealability, ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. Daniel, 529 U.S. 473, 484 (2000).

In this case, the Court finds that it is highly unlikely that any other court, including the Eighth Circuit Court of Appeals, could decide Petitioner's claims any differently than they have

been decided here. Petitioner has not identified, and the Court cannot independently discern, anything novel, noteworthy or worrisome about this case that warrants further appellate review. It is therefore recommended that Petitioner not be granted a COA in this matter. See, e g., Samuelson v. Roy, No. 13-cv-3025 (PAM/LIB), 2014 WL 2480171 (D. Minn. May 28, 2014).

## III. CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Petitioner's Motion to Delete Unexhausted Claim, [Docket No. 19], is **DENIED as moot.**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. That the Petition for a writ of habeas corpus, [Docket No. 1], be **DENIED** and this action be **DISMISSED with prejudice.**

Dated: July 28, 2015
s/Leo I. Brisbois
Leo I. Brisbois
U.S. MAGISTRATE JUDGE

### N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.